# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JEFFREY HUTCHINSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 04 C 2947 |
| ) | |
| ROD R. BLAGOJEVICH and ROGER ) | Judge Nan R. Nolan |
| WALKER, JR., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jeffrey Hutchinson filed suit against Governor Rod Blagojevich and Roger Walker, Jr., the director of the Illinois Department of Corrections ("IDOC"), alleging that Defendants improperly terminated his employment as Assistant Warden of the Vienna Correctional Center because of his political affiliation and because he spoke out against policies of the IDOC. Defendants filed a motion for summary judgment with the district court on October 7, 2005. Hutchinson argues that he cannot respond to that motion without further discovery and moves to compel responses to numerous discovery requests. The motion to compel has been referred to this court for resolution. For the reasons set forth here, the motion to compel is denied.

## BACKGROUND

Hutchinson became Assistant Warden of the Vienna Correctional Center in 2003. He was later terminated from that position in January 2004, approximately one year after Rod Blagojevich was sworn in as Governor on January 13, 2003. On April 26, 2004, Hutchinson filed suit against Governor Blagojevich and Roger Walker alleging that Defendants violated his First Amendment and Due Process rights by terminating his employment based on his political affiliation. On July 29, 2004, the district court stayed the case pending a "potentially dispositive appeal" to the Seventh Circuit in *Kiddy-Brown v. Blagojevich*, No. 04 C 1293. (Minute Order of 7/29/04, Doc. No. 7.) The plaintiff in *Kiddy-Brown* served as warden at an Illinois state prison until she was discharged,

allegedly based on her political affiliation. 408 F.3d 346, 349-50 (7th Cir. 2005). The defendants moved for judgment on the pleadings, arguing that they were entitled to replace the plaintiff with a "political loyalist" because the written position description included "substantial policy functions." *Id.* at 350. *See also Branti v. Finkel*, 445 U.S. 507, 517, 518 (1980) ("[P]arty affiliation may be an acceptable requirement for some types of government employment," for instance if "an employee's private political beliefs would interfere with the discharge of his public duties . . . .") The district court denied the motion, finding that "there simply was not enough information to determine whether the warden position . . . was a position for which political affiliation was an appropriate requirement." *Id.* at 351.

On May 13, 2005, the Seventh Circuit affirmed the district court on this issue, stating that "[t]he truth of Ms. Kiddy-Brown's factual allegations regarding the duties inherent in the warden position must be resolved by the district court on a more complete record." *Id.* at 357. On June 2, 2005, the district court denied Defendants' oral motion to continue the stay. (Minute Order of 6/2/05, Doc. No. 13.) Shortly thereafter on June 21, 2005, the court dismissed Hutchinson's due process claim and ordered limited discovery to proceed as to the remaining First Amendment claims. (Minute Order of 6/21/05, Doc. No. 17.)

A.  **Hutchinson's Discovery Requests**

Pursuant to the court's order, on June 21, 2005, Hutchinson served Defendants with his initial written discovery requests seeking some 111 categories of documents. On July 14, 2005, Defendants served Hutchinson with their Rule 26(a)(1) initial disclosures, identifying five individuals with discoverable information: Larry Plummer, Terry McCann, Nancy Martin, Daniel Austin, and Maribeth Moore. On August 17, 2005, Hutchinson served Defendants with his First Supplemental Requests to Produce seeking an additional 51 categories of documents. The next day, Hutchinson served a subpoena on the Illinois Department of Central Management Services seeking 156

2

categories of documents. Approximately one week later, on August 26, 2005, Hutchinson served similar subpoenas on the Illinois Department of Corrections and on the Governor's Office of Management and Budget. To date, neither Defendants nor the agencies has produced any documents responsive to these requests.

**B.**     *Riley v. Blagojevich*

On September 23, 2005, the Seventh Circuit issued a ruling in *Riley v. Blagojevich*, 425 F.3d 357 (7th Cir. 2005), which consolidated on appeal "two essentially identical cases" involving assistant wardens of Illinois state prisons who had been fired by the governor because they were not members of his political party. *Id.* at 359. In the case of Samuel Riley, assistant warden for operations at a prison with 700 inmates, the district court denied a motion to dismiss based on qualified immunity. In the case of Thomas Snyder, an assistant warden for programs at a somewhat smaller prison, the district court granted summary judgment for the defendants. *Id.* The Seventh Circuit noted that "a public official cannot be fired on the basis of his political affiliation unless the nature of his job makes political loyalty a valid qualification." *Id.* (citing *Elrod v. Burns*, 427 U.S. 347, 367-68 (1976); *Branti*, 445 U.S. at 518). In determining whether political loyalty is a valid qualification for a position, elected officials may rely on the official job descriptions "if no basis is presented for thinking [them] systemically unreliable . . ., even if a plaintiff is prepared to testify (self-servingly) that the job description doesn't actually describe what he does, thus precipitating a factual inquiry likely to be protracted and inconclusive." *Id.* at 360.

To assess the reliability of an official job description, "inquiry must focus on how the description was created; how it is updated and thus kept realistic rather than being allowed to drift far from the actual duties of the position; in short, on how reliable, how authoritative, the description is." *Id.* at 361. In the case of assistant wardens in the Illinois state prison system, the job descriptions are made and updated by the Illinois Department of Central Management Systems

3

("CMS"), and "[a]ny job holder who thinks the official description of his job inaccurate can challenge it and, if he succeeds in showing that it is inaccurate, get it changed." *Id.* at 361-62 (citing 20 ILCS 415/8a(1); 80 ILL. ADMIN. CODE § 301.20). The court recognized that the position descriptions for assistant wardens do not set forth "an exact description of what every assistant warden for operations or for programs does," but that "each is a *reliable* description rather than something that has been manipulated by officials seeking to expand their power to appoint loyalists beyond the lawful bounds." *Id.* at 361 (emphasis in original).

In reaching this conclusion, the court noted that the job descriptions "ha[d] not been changed materially since 1989, which is long before Blagojevich became governor." *Id.* In addition, "[t]here [was] no indication that the job descriptions in the record [were] not official . . . or that Governor Blagojevich or any other political official caused them to be altered, as by leaning on the members of the Civil Service Commission." *Id.* at 365. *Cf. Kiddy-Brown*, 408 F.3d 346 (parties did not present any testimony, affidavit, statutory reference, stipulation, or other ground for believing that the job description was official, reliable, and up to date). As the court explained, "[i]f the official job description is objective, as shown by the methods by which it is created, vetted, and updated to the present, then the elected officials can rely on it in deciding whom they can replace on political grounds." *Id.* The court thus reversed the denial of the motion to dismiss Riley's case, and upheld summary judgment for the defendants in Snyder's case.

C.      **The Current Discovery Dispute**

Relying on *Riley*, Defendants filed a motion for summary judgment on October 7, 2005. Defendants also moved to stay discovery pending resolution of that motion. On October 13, 2005, the district court granted the stay, "except as to that discovery that is necessary to respond to the motion for summary judgment." (Minute Order of 10/13/05, Doc. No. 28.) Hutchinson identifies some 83 discovery requests that, in his view, "relate[] to the duties and responsibilities of the

4

position at issue, the reliability of Illinois Department of Central Management Services position description documents and the manipulation to those position descriptions by government officials." (Motion ¶¶ 4, 9, 10, 12.) These include:

> (1) Hutchinson's personnel records; (2) documents relating to the Assistant Warden position at Vienna Correctional Center, including Position Descriptions; (3) documents relating to IDOC funding and expenditures; (4) documents supporting the following two assertions: that "the CMS Position Description is a document which Illinois law requires CMS to maintain," and that the Position Description is "a public record open to public inspection under Illinois law"; (5) communications with the Illinois Civil Service Commission and CMS related to the Assistant Warden position at Vienna Correctional Center; (6) documents relating to any positions Governor Blagojevich considered eliminating; (7) Position Descriptions for various other positions at Vienna Correctional Center, including Public Service Administrator and Senior Public Service Administrator; and (8) documents supporting Defendant Walker's assertions that the Assistant Warden duties required close contact and highly confidential communications with IDOC policymakers; autonomous and discretionary authority; participation in determining policies and principles; discretionary and policymaking powers; and meaningful input into policymaking decisions.

Hutchinson's motion to compel responses to these requests has been referred to this court for resolution.[1]

## DISCUSSION

The Position Description for Hutchinson's Assistant Warden position (number 40070-29-86-300-00-01) is maintained by CMS and reviewed and approved by the Illinois Civil Service Commission. Defendants claim that pursuant to *Riley*, discovery is not appropriate unless there is evidence that the Position Description has been manipulated. 425 F.3d at 360-61. In Defendants' view, Hutchinson cannot make such a showing because the official Position Description for Assistant Warden at Vienna Correctional Center has not been changed materially since 1980, long before Governor Blagojevich became governor in 2003. (Def. Resp., at 6.)

---

[1] Hutchinson's motion to compel is more properly viewed as a Rule 56(f) motion for discovery necessary to rebut summary judgment. In that regard, Hutchinson has submitted an affidavit explaining his need for the requested discovery, as well as a motion for leave to file the affidavit.

Hutchinson insists that *Riley* does not govern the facts of this case because "unlike the record articulated by the Panel in *Riley*, Hutchinson is asserting that elected officials have manipulated the Illinois civil service system and position descriptions to allow the filling of positions with political favorites when it was not appropriate." (Pl. Reply, at 2.) He notes, for example, that "certain Public Service Administrator positions of the Illinois Department of Central Management Services have duties and responsibilities strikingly similar to the alleged duties and responsibilities of Assistant Wardens yet those positions are not exempt from the Illinois Personnel Code or '*Rutan*[2] exempt' as are Assistant Warden positions." (*Id.* at 5-6.) According to Hutchinson, "CMS position description documents do not accurately describe the duties and responsibilities of IDOC positions," and he "did not execute any document stipulating to the authenticity or reliability of any CMS document." (Pl. Aff. ¶¶ 18, 54.) *Cf. Riley*, 425 F.3d at 364 ("Riley stipulated that the description of the job of assistant warden for operations that we have quoted is indeed the official description of his job"; Snyder "in an affidavit acknowledged that the job description had come from [CMS].")

Hutchinson also claims that assistant wardens could not in fact "exercis[e] any significant discretion in the performance of their duties and responsibilities" due to "constraints placed on the duties and responsibilities inherent in the positions of Warden and Assistant Warden by federal and state law." (Pl. Aff. ¶ 5.) He characterizes the duties of the Assistant Warden position as "administrative in nature," (*id.* ¶ 20), and claims that "CMS position description documents were not utilized by IDOC personnel to establish employment goals or objectives, and were not utilized for employee reviews." (*Id.* ¶ 19.) In Hutchinson's view, "the discovery requested is necessary and

---

[2] In *Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990), the Supreme Court held that party affiliation or other political considerations cannot generally be used as a factor in state hiring practices.

relevant to the issues of the systematic reliability and manipulation of the Illinois civil service system and position description documents." (Pl. Reply, at 14.)

Defendants deny that "there has been [any] showing that the official CMS Position Description is 'systematically unreliable.'" (Def. Resp., at 7.) They note that courts in this jurisdiction have relied on *Riley* to dismiss cases under similar circumstances without any discovery at all. *See, e.g., Pierson v. Blagojevich*, __ F.3d __, 2006 WL 306926 (7th Cir. Feb. 10, 2006) (reversing denial of motion for judgment on the pleadings where Position Description for plaintiff's position as warden of an Illinois state prison was in effect prior to Governor Blagojevich's election and the plaintiff stipulated to its authenticity); *Steigmann v. Democratic Party of Illinois*, 406 F. Supp. 2d 975, (N.D. Ill. 2005) (dismissing claim that Governor Blagojevich wrongfully terminated the plaintiff due to his political affiliation where the plaintiff "d[id] not challenge the authenticity or accuracy of the employment contract or the incorporated job description."); *Utley v. Monk*, No. 05-3017, 2005 WL 3478844 (C.D. Ill. Dec. 20, 2005) (granting motion to dismiss based on June 2003 CMS Position Description that left the duties of Chief Record Officer for the IDOC "largely unchanged" since 2001; plaintiff pleaded only "a legal conclusion that '[t]here was nothing in the job duties of Plaintiff's positions that made political considerations a requisite for the position.'")

Hutchinson offers nothing to suggest that Governor Blagojevich or any other official manipulated the Assistant Warden Position Description "to expand their power to appoint loyalists beyond the lawful bounds." *Riley*, 425 F.3d at 361. Indeed, Hutchinson nowhere indicates that "Governor Blagojevich or any other political official caused [the Position Description] to be altered, as by leaning on the members of the Civil Service Commission." *Id.* at 365. In his affidavit, Hutchinson merely states in conclusory fashion that personnel within the Office of the Governor, IDOC, CMS, and the Illinois Civil Service Commission "all would have . . . information related to the reliability of position description documents and the Illinois civil service system, as well as, manipulation of both." (Pl. Aff. ¶ 52.)

7

Hutchinson does argue strenuously that the duties and responsibilities set forth in the Position Description do not accurately reflect his actual work, and that Assistant Wardens at Vienna Correctional Center could not in fact exercise any discretionary authority. He notes that under *Riley*, the reliability of a position description depends upon "how the description was created; how it is updated and thus kept realistic rather than being allowed to drift far from the actual duties of the position . . . ." 425 F.3d at 361. The mere fact that Hutchinson did not perform the stated duties of the Position Description does nothing to advance his position here. *Riley*, 425 F.3d at 360-61 (quoting *Meeks v. Grimes*, 779 F.2d 417, 419 n.1 (7th Cir. 1985)) ("Our focus is on the 'inherent powers' of the office, not what any individual officeholder actually does.")

In addition, Hutchinson does not deny that the Assistant Warden job description is "official" or that it came from CMS.[3] Rather, he appears to question the integrity of CMS by pointing to other positions with responsibilities purportedly similar to those of Assistant Warden that are nonetheless not similarly *Rutan* exempt. (Pl. Resp., at 6) ("Therefore, an Order from this Court compelling production of the requested Senior Public Service Administrator and Public Service Administrator position description documents . . . is essential . . . to respond to the Motion for Summary Judgment.") Given that the Position Description for Assistant Warden has remained largely unchanged since 1980, comparing it to other Position Descriptions does nothing to further Hutchinson's claim that Defendants have manipulated the position to suit their political goals.

Hutchinson disagrees, claiming that it "cannot be disputed by the State Defendants that the [Position Description for Assistant Warden effective June 30, 2003] is materially and substantially

---

[3] Defendants' motion for summary judgment includes an affidavit from Larry Plummer, a Senior Public Service Administrator with CMS with the title of Division Manager, Division of Technical Services and Agency Training and Development. Plummer certifies that the Position Descriptions for Assistant Warden at Vienna Correctional Center, also attached to the summary judgment motion, are the official descriptions contained in the CMS files. Hutchinson summarily "challeng[es] the authenticity and reliability of . . . the Affidavit of Larry Plummer" but does not offer any supporting explanation. (Pl. Resp., at 2.)

8

different from the previous position descriptions." (Pl. Resp., at 13.) Hutchinson nowhere identifies any such specific and material differences, however, aside from noting that the position was not *Rutan* exempt from 1965 to 1978 but became *Rutan* exempt as of 1980. (*Id.* at 13-14.) To the extent this change occurred some 23 years before Governor Blagojevich became governor in 2003, it is not clear how it supports Hutchinson's assertion that Defendants have improperly altered the Assistant Warden position for political purposes. Significantly, Hutchinson does not claim that he or anyone else ever sought a change in the Assistant Warden job description to make it more accurate. *Riley*, 425 F.3d at 361-62 (noting that job holders are motivated to change both understated and overstated duties in a job description).

Hutchinson finally urges the court to follow *Derringer v. Civil Service Comm'n*, 66 Ill. App. 3d 239, 383 N.E.2d 771 (5th Dist. 1978), in which an Illinois Appellate Court held that an assistant warden in the state correctional system "cannot legally be transferred involuntarily from one geographical location to another for merely capricious or political reasons." *Id.* at 240, 383 N.E.2d at 772. The court does not find *Derringer* persuasive on this issue, particularly in light of the Supreme Court's subsequent decision in *Branti*, 445 U.S. at 517 ("[P]arty affiliation may be an acceptable requirement for some types of government employment.") On these facts, Hutchinson has not established the need for discovery to resolve Defendants' motion for summary judgment. His motion to compel is therefore denied.

## CONCLUSION

For the reasons stated above, Hutchinson's motion for leave to file affidavit (Doc. 54) is granted, but his motion to compel (Doc. 47) is denied. Defendants' motion to cite *Pierson v. Blagojevich*, ___ F.3d ___, 2006 WL 306926 (7th Cir. Feb. 10, 2006) as additional authority (Doc. 56) is granted.

9

ENTER:

Dated: March 7, 2006

_Nan R. Nolan_
———————————————
NAN R. NOLAN
United States Magistrate Judge