IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY HUTCHINSON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 2947 |
| | ) | |
| ROD R. BLAGOJEVICH AND ROGER WALKER, JR. | ) ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER REGARDING
PLAINTIFF'S MOTION TO COMPEL

JAMES F. HOLDERMAN, District Judge:

Plaintiff Jeffrey Hutchinson ("Hutchinson"), a former assistant warden fired from his position, filed a complaint against Governor Rod Blagojevich ("Blagojevich") and Roger Walker, Jr. ("Walker"), the director of the Illinois Department of Corrections ("IDOC") in April 2004. In his complaint, Hutchinson alleged that his termination was an unconstitutional exercise of political patronage and a violation of his right to free speech. The defendants filed for summary judgment based on a recent Seventh Circuit decision in *Riley v. Blagojevich*, 425 F.3d 357 (7th Cir. 2005), which presented nearly identical issues. Contending that he needed further discovery to respond to the defendants' summary judgment motion, Hutchinson filed a motion to compel (Dkt. No. 47) before Magistrate Judge Nolan. Magistrate Judge Nolan denied Hutchinson's motion in her Report and Recommendation order on March 7, 2006, and Hutchinson has filed timely objections to Magistrate Judge Nolan's order. For the reasons stated below, this court adopts Magistrate Judge Nolan's order and denies Hutchinson's motion to

1

compel (Dkt. No. 47).

## BACKGROUND

A. Factual Background

According to the allegations in Hutchinson's complaint, Hutchinson was promoted to assistant warden of Vienna Correctional Center in January 2003 during a Republican administration. Blagojevich, a Democrat, assumed the office of Governor in January 2004. That same month, Hutchinson alleges that he was fired from his job as assistant warden based on his political affiliation even though, Hutchinson claims, his job duties did not involve policymaking. (Elected officials may assign policymaking positions based on political loyalty. *See Branti v. Finkel*, 445 U.S. 507, 517-18 (1980); *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 355 (7th Cir. 2005).) Hutchinson also asserts that he spoke out on "matter of public concern," such as issues related to "employment vacancies within IDOC," "the unwillingness of Defendants Blagojevich and Walker to staff IDOC facilities at appropriate levels, the "safety of IDOC facilities," and the "reorganization of the IDOC," and that this speech also led to his termination. (Cmpl. ¶¶ 47-53.)

B. *Riley v. Blagojevich*, 425 F.3d 357

On September 23, 2005, in the midst of this litigation, the Seventh Circuit decided *Riley*, 425 F.3d 357, a consolidated case that involved two different assistant wardens asserting political patronage and free speech claims nearly identical to Hutchinson. The Seventh Circuit held in *Riley* that "if no basis is presented for thinking the official job descriptions systemically unreliable," elected officials may rely on them to determine whether political affiliation may be considered as a valid job qualification, "even if a plaintiff is prepared to testify (self-servingly that the job description doesn't actually describe what he does." *Riley*, 425 F.3d at 360. The

*Riley* opinion went on to note that job descriptions for assistant wardens are made and updated by the Illinois Department for Central Management Services and reviewed by the Civil Service Commission and that job holders may challenge the description should they believe it to be inaccurate. *Id*. at 361. Based on this finding and a determination that the job descriptions in the case of the two assistant wardens had not been materially changed since Blagojevich became governor, the Seventh Circuit concluded that the descriptions "ascribe significant policymaking responsibilities to assistant wardens of Illinois state prisons" and thus the terminations were lawful. *Id*. at 365. The Seventh Circuit also dismissed the plaintiffs' free speech claims as identical to their political patronage claims. *Id*. at 365.

C. Procedural History

After the defendants filed for summary judgment based on *Riley*, Hutchinson submitted the pending motion to compel discovery, distinguishing his case from *Riley's* factual circumstances. In Hutchinson's motion, he argued that the official job description in his situation was not reliable and had been manipulated. Hutchinson rests his argument on *Riley's* discussion that, in order to decide a political patronage case solely on job description, the description must be adjudged reliable. *Riley* states that "[f]or the job description to be the pivot on which the case turns, inquiry must focus on how the description was created; how it is updated and thus kept realistic rather than being allowed to drift far from the actual duties of the position; in short on how reliable, how authoritative, the description is." *Riley*, 425 F.3d at 361.

Denying Hutchinson's motion to compel, Magistrate Judge Nolan rejected Hutchinson's attempt to distinguish his case from the factual circumstance of *Riley*, holding instead that his case fit within the *Riley* paradigm. Magistrate Judge Nolan concluded that the job description

3

was "official" and that Hutchinson had offered nothing to suggest that the defendants had manipulated the job description after taking office. Specifically, Magistrate Judge Nolan emphasized that there had been no material changes made to the job description since 1980, long before Blagojevich took office. In addition, looking to *Riley's* instruction to ignore self-serving statements by plaintiffs about their actual duties if job descriptions are systematically reliable, Magistrate Judge Nolan rejected Hutchinson's argument that the actual duties of the position do not match the description. Hutchinson has now filed in this court approximately fifteen objections to Magistrate Judge Nolan's decision, most of which he does little to develop other than to allege that Magistrate Judge Nolan erred.

## STANDARD OF REVIEW

A motion to compel is considered a nondispositive matter and so this court's review of Magistrate Judge Nolan's decision is governed by Rule 72(a) and 28 U.S.C. § 636(b)(1). *See Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997); *Sparks Tune-up Ctrs., Inc. v. Strong*, No. 92 C 5902, 1994 WL 188211, *2 (N.D. Ill. May 12, 1994). If a party serves and files objections to a magistrate judge's order within 10 days of being served with a copy of the order, this court reviews the order and must modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a). A finding is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948); *see Carnes Co. v. Stone Creek Mech., Inc.*, 412 F.3d 845, 847 (7th Cir. 2005). This court's review is deferential and the court will only set aside and modify a decision that "contains some clearly apparent mistake." *F.T.C. v. Pacific First Ben., LLC*, 361 F. Supp.

2d 751, 754 (N.D. Ill. 2005) (citing *Weeks*, 126 F.3d at 943; *Chavez v. Illinois State Police*, 27 F. Supp. 2d 1053, 1066 (N.D. Ill. 1998)).

ANALYSIS

A. Arguments Addressed in *Riley*

For ease of discussion, this court groups Hutchinson's arguments, first turning to those foreclosed by *Riley*. Hutchinson raises several arguments aimed at challenging Magistrate Judge Nolan's determination that the job description produced by the CMS and authenticated with an affidavit from Larry Plummer, a Senior Public Service Administrator with CMS, was both official and reliable. First, Hutchinson argues that, unlike one of the plaintiffs in *Riley*, he did not stipulate that the attached CMS job description for assistant warden of Vienna Correctional Center was "official." This argument is easily dismissed. Hutchinson overlooks the Seventh Circuit's acceptance of an affidavit acknowledging that the job description came from the CMS in the absence of a stipulation from the other plaintiff in that case. *See Riley*, 425 F.3d at 364. Furthermore, with regard to Hutchinson's challenge in his motion to compel to the authenticity of Plummer's affidavit, Hutchinson provides this court with no reason to question Magistrate Judge Nolan's acceptance of the affidavit as evidence.

Hutchinson additionally takes issue with the integrity of the CMS and its role in creating job descriptions, noting that descriptions of other nonpolicymaking positions were similar to the assistant warden job description. As Magistrate Judge Nolan correctly notes, *Riley* foreclosed this argument. In *Riley*, the Seventh Circuit concluded that state officials were entitled to rely on the job descriptions made and updated by the CMS. *Riley*, 425 F.3d at 362; *see Pierson v. Blagojevich*, 437 F.3d 587, 588 (7th Cir. 2006) (per curiam). Both Magistrate Judge Nolan and

5

this court must follow the law of the Seventh Circuit. Should Hutchinson wish to press this issue further, he must do so before the Seventh Circuit. The same holds true for Hutchinson's contention that Magistrate Judge Nolan should not have relied on *Riley* for how the Illinois job descriptions are made and updated. As far as Hutchinson's specific argument that *Riley* does not provide a blanket description of the position of assistant warden, Magistrate Judge Nolan never held that it did.

In a related argument to his challenge to the integrity of the CMS, Hutchinson asserts that Magistrate Judge Nolan misconstrued his argument about the actual duties of the assistant warden position. According to Hutchinson, he argued in his motion to compel that the official job description did not match the duties *inherent to the position*, as opposed to Magistrate Judge Nolan's characterization that he was comparing *his* actual duties. This contention gets Hutchinson nowhere. The answer given in Magistrate Judge Nolan's decision is still responsive to Hutchinson's contention about the duties inherent to the position. As Magistrate Judge Nolan related, *Riley* explains that a description is not adjudged unreliable based on a plaintiff's self-serving statements especially given the opportunity job holders had to challenge inaccurate job descriptions. *See Riley*, 425 F.3d at360-62. As far as Hutchinson's vague argument that the cited law in *Riley* does not support the Seventh Circuit's conclusion on this issue, this again is another issue he would have to raise with the Seventh Circuit. Finally, Hutchinson's continued urging that this court consider *Derringer v. Civil Serv. Comm'n*, 383 N.E.2d 771 (Ill. App. Ct. 1978) for the proposition that assistant wardens could not be terminated for political reasons must be rejected. The Supreme Court's and the Seventh Circuit's decision are binding authority that this court must apply. The Seventh Circuit's decision in *Riley* supercedes *Derringer* as legal

authority to which this court must look in making a determination in this case.

B. Undeveloped Arguments

Hutchinson next presents several undeveloped arguments that fail to identify how Magistrate Judge Nolan allegedly erred or the effect of the alleged error on the outcome. Hutchinson claims that he needed discovery of his personnel files for the alleged purpose of proving that he did not have a chance to review the accuracy of the a new job description created by defendant Walker. Magistrate Judge Nolan, however, concluded that there were no material changes in the job description submitted by Walker and the previous job descriptions stemming back to 1980, so any discovery regarding Hutchinson's opportunity to view the job description that Walker submitted has no impact on his failure to challenge the listed duties. Although Hutchinson also challenges the finding that there were no material changes, Hutchinson does not identify any change he considers material. Without further development of this argument, this court upholds Magistrate Judge Nolan's finding that the job description has not materially changed since 1980. Hutchinson also fails to provide any factual support for his conclusory statement that the defendants manipulated the job description for assistant warden, and this court sees no reason to disturb Magistrate Judge Nolan's finding on that point. Lastly, Hutchinson takes issue with Magistrate Judge Nolan's summary of his requested discovery material and her notation that a motion under Federal Rule of Civil Procedure 56(f) would have been more appropriate. This court does not see how either of Magistrate Judge Nolan's statements affected the outcome of the order (nor is the court persuaded by Hutchinson's assertion of error).

C. Free Speech Claim

Finally, this court will address the only argument in Hutchinson's brief that warrants a

7

lengthier discussion: his contention that Magistrate Judge Nolan did not fully consider his second claim that he was fired in retaliation for his exercise of free speech on topics of public concern allegedly unrelated to his duties. According to Hutchinson, Magistrate Judge Nolan improperly characterized his speech as relating to IDOC policies, when in fact they were matters of public concern unrelated to his viewpoints and his position. This construction is pertinent because even policymaking employees may be protected under the First Amendment for speech on a matter of public concern unrelated to their jobs if they satisfy the balancing test first set out in *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968). *See Kiddy-Brown*, 408 F.3d at 358; *Remus v. Sheahan,* No. 05 C 1495, 2006 WL 418654, *3 (N.D. Ill. Feb. 16, 2006). However, if Hutchinson's speech on a matter of public concern is critical of his superiors or their stated policies, as a job holder in a policymaking position, his speech would not be protected. *Kiddy-Brown*, 408 F.3d at 358; *Vargas-Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 971-72 (7th Cir. 2001). Hutchinson's free speech claim would thus terminate with the conclusion that the assistant warden position at Vienna Correctional Center has policymaking authority.

Magistrate Judge Nolan correctly analyzed Hutchinson's free speech claim to reach the conclusion that Hutchinson because of his position as assistant warden comes within the policymaker exception. This court agrees with Magistrate Judge Nolan's characterization of Hutchinson's speech as relating to the policies of the IDOC and thus his position as assistant warden. Hutchinson, however, fails to explain why he believes that his speech—which address issues of staffing, safety, and reorganization—does not criticize his superiors or that his speech does not relate to policies at the IDOC and his assistant warden position. Moreover, upon review and analysis, this court finds no distinction. Because Magistrate Judge Nolan properly described

8

Hutchinson's speech as relating to the policies of the IDOC, it is not protected speech and collapses into the analysis of his political patronage claim, which is within the scope of the *Riley* case discussed earlier.

### CONCLUSION

Accordingly, this court adopts Magistrate Judge Nolan's Report and Recommendation order and denies plaintiff Jeffrey Hutchinson's motion to compel (Dkt. No. 47). This case is set for further status on April 25, 2006 at 9:00 a.m.

ENTER

_____
JAMES F. HOLDERMAN
United States District Judge

DATE: April 12, 2006