IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY HUTCHINSON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 2947 |
| | ) | |
| ROD R. BLAGOJEVICH AND ROGER WALKER, JR. | ) ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER REGARDING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JAMES F. HOLDERMAN, District Judge:

Plaintiff Jeffrey Hutchinson ("Hutchinson"), a former assistant warden fired from his position, filed a complaint against defendants Governor Rod Blagojevich ("Blagojevich") and Roger Walker, Jr. ("Walker"), the director of the Illinois Department of Corrections ("IDOC"), in April 2004. In his complaint, Hutchinson alleged that his termination was an unconstitutional exercise of political patronage and a violation of his right to free speech. The defendants filed for summary judgment (Dkt. No. 21) based on a recent Seventh Circuit decision in *Riley v. Blagojevich*, 425 F.3d 357 (7th Cir. 2005), which presented nearly identical issues. Contending that he needed further discovery to respond to the defendants' summary judgment motion, Hutchinson filed a motion to compel (Dkt. No. 47). On April 12, 2006, this court adopted Magistrate Judge Nolan's Report and Recommendation order from March 7, 2006 and denied Hutchinson's motion to compel. This court now returns to the defendants' motion for summary judgment (Dkt. No. 21). For the reasons stated below, this court grants the defendant's motion.

1

BACKGROUND

A.  Facts

Hutchinson was promoted to assistant warden of the Vienna Correctional Center ("VCC") in January 2003 during a Republican administration and then fired in January 2003, a year after Governor Blagojevich assumed office. Hutchinson claims that he was unconstitutionally fired based on his political affiliation in violation of the First Amendment. Although elected officials may hire individuals for policymaking positions based on political affiliation, Hutchinson alleges that the position of assistant warden at the VCC did not involve policymaking responsibilities. *See Branti v. Finkel*, 445 U.S. 507, 517-18 (1980); *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 355 (7th Cir. 2005). Hutchinson also asserts that he spoke out on "matter[s] of public concern," such as issues related to "employment vacancies within IDOC," "the unwillingness of Defendants Blagojevich and Walker to staff IDOC facilities at appropriate levels, the "safety of IDOC facilities," and the "reorganization of the IDOC," and that this speech also led to his termination. (Cmpl. ¶¶ 47-53.)

B.  Official Job Description for Assistant Warden

The Illinois Department of Central Management Services ("CMS") makes and updates the official job descriptions for positions in the IDOC. The June 2003-updated description for assistant warden of the VCC is as follows:

> Subject to administrative approval of the Warden, Sr. Public Service Adm., serves as Assistant Warden of Operations; formulates, organizes, and directs the overall Operations Program for the Vienna Correctional Center; supervises staff; maintains and enforces disciplinary, safety, and security and custodial measures; administratively responsible and accountable for execution of policies and procedures in management of the institution while serving as Deputy Warden.

1. As Assistant Warden, assists in development, establishment and implementation of rules, regulations, and directives, policies and procedures of the institution to ensure proper operation of the daily functions; administratively responsible and accountable for execution of policies and procedures in management of the institution while serving as Deputy Warden.

2. Plans, organizes and directs the overall Operations function and their managers, including security, physical plant operations, dietary services, inmate discipline, and other miscellaneous logistical support services; coordinate[s] all inmate programs related to these functions; participates in the budget process by gathering data from department heads regarding current and anticipated programs and projects; makes recommendations to management outlin[ing] budgetary needs.

3. Supervises staff; assigns work; approves time off; provides guidance and training; gives oral reprimands and effectively recommends grievance resolutions; completes and signs performance evaluations; establishes annual goals and objectives; counsels employees on problems with productivity and quality of work; determines staffing needs to achieve program goals and objectives; reviews activity reports.

4. Conducts routine and unscheduled safety, health, sanitation and security inspection tours throughout the institution; makes recommendations to the Warden as to any changes, problems or improvements.

5. Serves as Chairman of the Adjustment Committee, including making decision on disciplinary problems involving infractions of institutional rules by inmates.

6. Performs other duties as required or assigned which are reasonably within the scope of the duties enumerated above.

(Def. Mem. for Summ. J. Ex. A.)

C.   Procedural History

Hutchinson filed a complaint, alleging that his termination was an unconstitutional exercise of political patronage and a violation of his right to free speech. After the defendants filed for summary judgment, Hutchinson sought further discovery through a motion to compel. In the midst of these motions, on September 23, 2005, the Seventh Circuit decided *Riley,* a consolidated case that involved two different assistant wardens asserting political patronage and

free speech claims nearly identical to Hutchinson. In *Riley,* the Seventh Circuit held that "if no basis is presented for thinking the official job descriptions systemically unreliable," elected officials may rely on them to determine whether political affiliation may be considered as a valid job qualification, "even if a plaintiff is prepared to testify (self-servingly) that the job description doesn't actually describe what he does." *Riley*, 425 F.3d at 360. *Riley* states that "[f]or the job description to be the pivot on which the case turns, inquiry must focus on how the description was created; how it is updated and thus kept realistic rather than being allowed to drift far from the actual duties of the position; in short on how reliable, how authoritative, the description is." *Id.* at 361. Based on a finding that the CMS job descriptions for assistant wardens in Illinois was systemically reliable and a determination that the job descriptions in the case of the two assistant wardens had not been materially changed since Blagojevich became governor and so there was no evidence that the state officials had manipulated the job description, the Seventh Circuit concluded that the descriptions "ascribe significant policymaking responsibilities to assistant wardens of Illinois state prisons" and thus the terminations were lawful. *Id*. at 365. The Seventh Circuit also dismissed the plaintiffs' free speech claims as identical to their political patronage claims. *Id*. at 365. Finding that the Seventh Circuit's decision in *Riley* foreclosed Hutchinson's arguments for further discovery, the court denied Hutchinson's motion to compel on April 12, 2006.

LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

4

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, this court takes all facts and inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). In considering a motion for summary judgment, this court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003). Finally, the evidence relied upon must be competent evidence of a type otherwise admissible at trial. *Stinnett v. Iron Work Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002).

## ANALYSIS

A.  Political Patronage Claim

1.  Arguments Previously Raised in Hutchinson's Motion to Compel and Foreclosed by
    *Riley*

In his response to the defendant's summary judgment motion, Hutchinson rehashes many of the arguments from his motion to compel that the court rejected as foreclosed by *Riley*. The court addressed these arguments in great detail in its Memorandum and Opinion from April 20, 2006, denying Hutchinson's motion to compel, and so the court only briefly touches upon those same arguments the second time around. *See Hutchinson v. Blagojevich*, Mem. and Op., Dkt.

No. 72, (N.D. Ill. Apr. 20, 2006). Hutchinson renews his challenge to the authority of CMS to create and update job descriptions under Illinois statute, arguing that CMS only "maintains" the job descriptions as opposed to creating them, and that CMS does not have the authority to create the descriptions. In addition, Hutchinson argues that the defendants have generally manipulated the employment process through methods outside of changes to the CMS job descriptions. Finally, Hutchinson reiterates his contention from his motion to compel that the inherent duties of his position were not policy-related and are not reflected by the CMS job description. Relatedly, Hutchinson contends that the assistant warden position does not involve policymaking duties, as evidenced by the alleged substantial similarity between his job description and job descriptions for other jobs not considered to be policymaking positions. The court again rejects these arguments based on *Riley*. *Riley,* as confirmed by *Pierson v. Blagojevich*, 437 F.3d 587 (7th Cir. 2006) (per curiam) instructs that an official job description, if reliable, is alone sufficient for a court's determination "whether political affiliation is a legitimate requirement of the job." *See Pierson*, 437 F.3d at 588; *Riley*, 425 F.3d at 364. *Riley* also holds that the job descriptions are "made and updated" by CMS and are systemically reliable. *Riley*, 425 F.3d at 361-62. Hence, unless Hutchinson can establish that the CMS official job description for assistant warden of the VCC is not reliable or that the description was manipulated by state officials seeking to appoint party loyalists, any argument that this court should look beyond the CMS official job descriptions to determine if state officials may consider political affiliation for in hiring an assistant warden at the VCC is precluded by *Riley* and *Pierson*.

2.      Reliability of the CMS Job Description

In two arguments not completely foreclosed by *Riley*, Hutchinson challenges the reliability of the CMS official job description for his position at the VCC as an assistant warden. Hutchinson first renews his argument from his motion to compel that he did not stipulate to the authenticity of the CMS job description for assistant warden of the VCC. In a related, but new argument, Hutchinson further asserts that the affidavit of Larry Plummer ("Plummer"), a Senior Public Service Administrator with CMS, (Def. Mem. for Summ. J., Ex. 2) was insufficient to authenticate the description. According to Hutchinson, Plummer was "incompetent, as a matter of law, to establish the inherent duties and responsibilities of the position at issue because [he had] three(3) months worth of service, none of which was with the IDOC." (Pl. Resp. at 8.) As the court explained in its denial of Hutchinson's motion for summary judgment, (Dkt. No. 72 at 5), so long as there is an authenticating affidavit attesting that the position descriptions relied on by the state officials are the descriptions in the CMS files. Plummer's affidavit provides this authentication. Contrary to Hutchinson's assumption that Plummer needed knowledge of the inherent duties of the position or familiarity with IDOC, Plummer is needed only to attest to whether the CMS job descriptions are official and nothing more. Plummer's affidavit serves this limited purpose.

In another argument aimed at undermining the reliability of the CMS job description, Hutchinson points out that the copy of the job description for his position that he received through a request to CMS differed from the official CMS job description certified as official by Plummer. The two documents are identical with one exception: the box for whether the position is "*Rutan* exempt" is blank on Hutchinson's copy (Pl. Resp. Ex. 6E) and contains a written "Y"

7

on the official document (Def. Mem. for Summ. J., Ex. A).[1]  Hutchinson contends that the missing "Y" on his version of the document (Pl. Resp. Ex. 6E) establishes that the CMS official job description is not reliable for the purposes of determining whether the assistant warden position falls under the policymaking exception.

The absence of the "Y" in the box for whether the assistant warden position is *Rutan*-exempt on Hutchinson's copy of the his job description (Pl. Resp. Ex. 6E) does not undermine the reliability of the CMS job descriptions authenticated by Plummer.  Hutchinson does not contend that his copy of his job description differs in terms of the listing of the job duties for his position from the certified copy submitted by the defendants.  In other words, Hutchinson is not arguing that the official copy of the job description submitted by the defendants is a forgery or has been fraudulently altered for this litigation, only that *both* versions do not contain all the "inherent" duties of his job (an argument refuted by *Riley*).

Finally, Hutchinson rehashes his argument from his motion to compel that the job description, which was updated by defendant Walker in June 2003, is materially different from past versions of the job description for assistant warden of the VCC, and thus there is evidence that the state officials manipulated the job description.  Specifically, Hutchinson highlights one newly added duty to the job description that the assistant warden "participate[ ] in the budget process . . ." as evidence that the defendants have materially changed the job description since entering office and thus the job description cannot be relied upon to determine whether political

---

[1] The term "*Rutan* exempt" refers to a Supreme Court case originally from Illinois, *Rutan v. Repub. Party of Ill*., 497 U.S. 62 (1990), which held that promotions, transfers, and recalls based on political affiliation or support are an impermissible infringement on public employees' First Amendment rights, unless the government has a vital interest in doing so.

affiliation is a legitimate qualification. (Def. Mem. for Summ. J. Ex. A.) As the court previously held, the language in the updated job description from June 2003 is not materially different from the prior job descriptions for assistant warden for the last 20 years. Although the job description for assistant warden of the VCC from September 1994 does not use the word "budget," the listed duties involving working with "various department heads and their staff in order to ensure an efficient, orderly and equitable operation for both employees and inmates" (Def. Mem. for Summ. J. Ex. B) relays the same responsibilities through different language. The court again concludes that Hutchinson cannot establish that the official job description has been manipulated by the defendants because the duties have been materially the same since 1980.

3.  Whether Job Duties Fall Under the Policymaking Exception

After determining that the CMS official job description for Hutchinson's position as assistant warden of the VCC is reliable, the court next reviews whether the assistant warden position would be classified under the policymaking exception based on the duties listed for the position. The Seventh Circuit in *Riley* determined that the descriptions depicted duties for which political affiliation is a legitimate requirement for the job. *See Riley*, 425 F.3d at 364. The job description for Hutchinson's position is substantially similar to the descriptions for assistant wardens in *Riley*. The court follows the Seventh Circuit and concludes that Hutchinson's job description falls within the policymaking exception that allows for consideration of political affiliation.

B.  Free Speech Claim

Hutchinson also renews his arguments that he was fired in retaliation for his exercise of free speech on topics of public concern allegedly unrelated to his duties. The court determined

in its denial of Hutchinson's motion to compel that the topics on which Hutchinson spoke related to his job and that as a job holder in a policymaking position, his speech was not protected. *Kiddy-Brown*, 408 F.3d at 358; *Vargas-Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 971-72 (7th Cir. 2001). In effort to resuscitate his claim, Hutchinson cites a case pending before the Supreme Court, *Garcetti v. Cabellos*, No. 04-473, at the time of Hutchinson's response to the defendants' summary judgment motion about whether a public employee engaged in purely job-related speech would be protected by the First Amendment. The Supreme Court decided the case on May 30, 2006, holding that an employee's speech made pursuant to his or her official responsibilities is not protected under the First Amendment. *Garcetti*, No. 04-473, slip op. at 12 (May 30, 2006). The decision does not help Hutchinson, even assuming his statements were not made pursuant to his official duties because the case did not address the policymaker-employee exception. The court stands by its earlier ruling that Hutchinson cannot establish a First Amendment violation because, as a policymaker, speech related to his job is not protected.

Finally, to the extent Hutchinson "incorporate[s]" his motion to compel (Pl. Resp. at 1), such an attempt is denied. Hutchinson never filed a motion under Federal Rule of Civil Procedure 59(e) seeking reconsideration of the court's denial of his motion to compel and this court sees no reason to review its previous decision.

## CONCLUSION

Accordingly, the court grants the defendants' motion for summary judgment (Dkt. No. 15). Judgment is entered in favor the defendants and against the plaintiff. Case is closed.

ENTER:

_____
JAMES F. HOLDERMAN
United States District Judge

Date: June 1, 2006